**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Edwards SOARES, Defendant-
Appellant.**

**No. 71–1153.**

United States Court of Appeals,
Tenth Circuit.

March 1, 1972.

William R. Burkett, U. S. Atty., for
plaintiff-appellee.

Philip Deitch, Los Angeles, Cal., for defendant-appellant.

Before LEWIS, Chief Judge, and McWILLIAMS and BARRETT, Circuit Judges.

McWILLIAMS, Circuit Judge.

By indictment John Edwards Soares and Larry D. Lee were jointly charged with causing to be transported in interstate commerce from Oklahoma City, Oklahoma, to Palm Springs, California, certain prints of Pablo Picasso etchings of a value of more than $5,000, knowing the same to have been stolen, in violation of 18 U.S.C. § 2314. A few days before trial Lee changed his not guilty plea to one of guilty as charged. Soares' trial by jury resulted in a guilty verdict and he was sentenced to seven years imprisonment. He now appeals and we affirm.

The Government's case established that an art gallery in Oklahoma City was burglarized and some fifty-one Picasso etchings were stolen therefrom; that Soares transported, or caused to be transported, the same from Oklahoma to California via Las Vegas, Nevada; and that thirty-one of the etchings were thereafter sold to an art collector in Palm Springs through a California art dealer for $35,000. Since the sufficiency of the evidence is not in issue, additional detailing of the evidence will be made only as is necessary to an understanding of the matters raised on appeal.

I.

As indicated, Soares' codefendant, Lee, changed his plea to one of guilty a few days prior to trial. In the process of empaneling the jury, the jurors were apprised that Lee and Soares had been jointly indicted. After the jury was sworn, on request of the Government, the trial court advised the jury that only Soares was on trial; that Lee had pleaded guilty and accordingly would not stand trial; and that the fact that Lee pleaded guilty created "no in-

ference at all" as to the guilt of Soares. Counsel moved for a mistrial, which motion was denied. It is argued that the trial court erred in refusing to declare a mistrial and that this error requires reversal.

In Richards v. United States, 193 F.2d 554 (10th Cir. 1951), cert. denied, 343 U.S. 930, 72 S.Ct. 764, 96 L.Ed. 1340 (1951), three defendants were about to go on trial and one changed his plea to guilty. We held that there was no error in the trial court's apprising the jury that one of the three had thus changed his plea. In so holding we observed that the "court did no more than make a statement of fact as to the condition of the record."

Counsel would distinguish the instant case from *Richards* on the ground that here Lee changed his plea several days before the commencement of the trial, whereas in *Richards* the change of plea occurred during the empaneling of the jury. We do not deem this distinction to be a significant one.

In Wood v. United States, 279 F.2d 359 (8th Cir. 1960), two defendants changed their plea to that of guilty two days before trial. During the empaneling of a jury to try the remaining defendants, the trial court advised counsel that he proposed to inform the jurors that the two had thus changed their pleas, on the ground that the "jury has a lot of common sense and they are entitled to know where they [the defendants who pleaded guilty] are." The trial court then did instruct along the lines indicated, and on appeal it was held that in so doing "the trial court did what it should have done."

We find no error in the trial court advising the jury that Lee had changed his plea to one of guilty. Though Lee did not testify at Soares' trial, he was present at the trial and was identified by several witnesses during the course of the trial. The jury under such circumstances should be apprised why Lee, who was mentioned throughout the trial, was not himself standing trial, in order

to keep straight the "condition of the record."

■■ As an additional facet of this argument counsel asserts that the trial court did not go far enough in its cautionary instruction. As indicated, the trial court instructed the jury that the fact that Lee had changed his plea created no inference at all as to the guilt of Soares. In the trial court, counsel simply objected to informing the jury that Lee had pleaded guilty and no objection was made to the form of the cautionary instruction. However, in this court counsel, relying on such cases as Davenport v. United States, 260 F.2d 591 (9th Cir. 1958), cert. denied, 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573 (1959), as well as Wood v. United States, *supra,* argues that the trial court should have instructed the jury that the fact that Lee had pleaded guilty was not only no evidence of Soares' guilt, but was no evidence that a crime had been committed by anyone. We do not agree that the cautionary instruction need go that far. In the first place, such instruction would not be entirely accurate, since Lee's plea of guilty is certainly some evidence that *he* committed a crime. We agree of course that Lee's plea of guilty is no evidence as to Soares' guilt. And the jury was so instructed in language which is in accord with that suggested in Richards v. United States, *supra.* Accordingly, we find no deficiency in the instruction given the jury in the instant case and conclude that the instruction given adequately covered the situation.

## II.

A key witness for the Government was one Clifford Isbell, a paid informer of the FBI who had one prior felony conviction. He testified that he saw Soares in Las Vegas, Nevada, with some Picasso prints and that Soares informed him that he (Soares) and Lee had stolen the prints in a burglary of an Oklahoma City art store. Isbell promptly informed the FBI of his conversation with Soares.

In preparation for trial, counsel for Soares, who is not present counsel, jour-neyed to Las Vegas to interview Isbell. Counsel apparently first conversed with Isbell in a coffee shop of a Las Vegas Casino at which time Isbell denied that he ever saw Soares with any Picasso prints or that Soares had ever admitted to him that he (Soares) had stolen some Picasso prints in an Oklahoma City burglary. As a follow-up to that conversation, Isbell apparently also gave some sort of a sworn statement to the same effect in counsel's Las Vegas hotel room. Counsel in his cross-examination of Isbell brought out the foregoing, all of which incidentally was freely admitted by Isbell. On redirect, Isbell declared that his testimony in open court under oath represented the truth, and that his statements to counsel did not represent the truth. He explained his conduct on the ground that he was in fear.

■ Concerning the manner in which the jury should handle Isbell's testimony, the trial court in line with Todd v. United States, 345 F.2d 299 (10th Cir. 1965), instructed the jury as follows:

"You are instructed that the testimony of an informer who provides evidence against a defendant for pay, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against the defendant."

Additionally, the jury was given the usual instruction concerning the impeachment of a witness by proof of a prior felony conviction.

Counsel claims that the trial court did not go far enough in its instructions to the jury relating to Isbell's credibility. In this regard, counsel tendered an instruction to the effect that Isbell was in fact an "admitted perjurer" and that the testimony of an "admitted perjurer should always be weighed with great caution and care." This instruction was refused by the trial court and counsel asserts such is reversible error.

We find no error in the instructions relating to Isbell's testimony and the manner in which it should be approached by the jury. The facts were fully developed and in the last analysis it was of course for the jury to determine when Isbell was telling the truth. Actually, the instruction given was quite similar to the one tendered by the defendant, excepting that it did not come right out and label Isbell a perjurer. There was no error in refusing to give the tendered instruction.

In this same connection, minor complaint is made to Isbell's answer that he gave incorrect information to defendant's counsel because he was in fear. It is argued that such somehow suggests that Soares was guilty of some other crime, including perhaps the wilful suppression of evidence. This argument is tenuous in the extreme.

### III.

Lionel Steinberg testified as a Government witness, his testimony relating to his purchase in Palm Springs, California, from a local art dealer of thirty-one Picasso prints for $35,000. He had no contact with either Lee or Soares. This witness was examined and cross-examined at length. Upon the completion of his testimony when the trial judge indicated that he was going to excuse the witness from further attendance at court, counsel objected and requested that the witness be ordered to remain in attendance for "possible further cross-examination." The trial court refused to thus order the witness, advising counsel that he should go right ahead and conclude his cross-examination and that as far as the trial court was concerned Steinberg would then be excused, subject to the right of Soares to subpoena him as his own witness.

A day or two later, counsel, during his presentation of evidence on behalf of Soares, announced that he desired to recall Steinberg for more cross-examination. By that time Steinberg had left the state. This chronology adds up to reversible error, says counsel. We do not agree.

■■ The recalling of a witness for additional cross-examination is ordinarily within the sound discretion of the trial court even when the witness is still in attendance. Belanger v. Alton Box Board Co., 180 F.2d 87 (7th Cir. 1950). Counsel indicated in his offer of proof the matters on which he desired to further cross-examine Steinberg had the latter then been present. These matters were not material nor relevant to the issues in the case. But in any event, we find no error in the action of the trial court. Soares' admitted right to cross-examine Steinberg was not abridged by the trial court, which specifically advised counsel that he could cross-examine at length, but that it wasn't going to be strung out through the entire trial. See in this regard Batsell v. United States, 403 F.2d 395 (8th Cir. 1968), cert. denied, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785.

### IV.

■ Error is also claimed on the fact that several witnesses testified using business records for which counsel says there was no proper foundation. No objection on this ground was made in the trial court. In any event, there was no error in allowing, for example, the auditor of a Los Angeles hotel who had custody of the books and records of the hotel to testify concerning a registration card of the hotel.

Judgment affirmed.

LEWIS, Chief Judge (concurring).

I concur but in so doing wish to recognize subjectively the prejudice inherent in the act of informing a jury that a co-defendant has pleaded guilty and the lack of validity in the assumption that an instruction to draw no adverse inference from that fact realistically protects the defendant from all harm. Cf. Bruton v. United States, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed.2d 476. However, I likewise recognize that the trial of a

criminal case to a jury should not contain avoidable overtones of mystery and dissatisfaction as to their knowledge of all the facts. I would leave the matter within the discretion of the trial court in the first instance, negativing any judicial duty to comply with a simple prosecution pre-trial request to "keep the record straight" and imposing the duty to consider each case under its particular circumstances. When, as in Richards v. United States, supra, the pleading codefendant testifies in the main case and when, as in Wood v. United States, supra, pleas of guilty are entered after the trial is in progress, an explanation of the facts is clearly proper.

In the case at bar, the codefendant Lee was present during the trial and participated passively. Consequently I concur and agree, but with hesitancy, that the trial court did not abuse its discretion.